**STATE ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent-Plaintiff,**

v.

**Keith DUNN et al., Appellants-Defendants.**

No. 39128.

Missouri Court of Appeals, St. Louis District, Division No. 2.

July 11, 1978.

J. David Collins, Collins & Grimm, Macon, for appellants-defendants.

Dennis J. Redel, Curtis F. Thompson, State Highway Commission, Jefferson City, for respondent-plaintiff.

REINHARD, Judge.

This case involves an attempt by the Missouri State Highway Commission to force the removal of a fence owned by James J. Donaldson and Pearl Donaldson and a sign advertising the Hereford farm of defendants Keith Dunn, Marilyn Dunn and Harold Dunn. Defendants appeal from a judgment of the trial court granting mandatory injunctions against them.[1]

The petition on which this matter was tried is plaintiff's second amended petition. Plaintiff's original petition was in one count which asked that the sign be removed because it violated §§ 226.500 to 226.600, RSMo. 1969, generally known as the "Billboards" law. Plaintiff's first amended petition contained two counts. In Count I, plaintiff requested the removal of the sign under §§ 226.500 to 226.600 and in Count II requested the removal of the sign under § 304.321, RSMo. 1969.[2] In both the original and the first amended petitions, the plaintiff alleged that the sign was located "on property owned by defendants, James J. Donaldson and Pearl Donaldson, located in Scotland County . . . said property lying adjacent to said State Highway 15."

In Count I of its second amended petition, plaintiff alleged that defendants Keith Dunn, Marilyn Dunn and Harold Dunn erected and maintained an advertising sign upon plaintiff's "right-of-way" for the advertisement of the defendants' Hereford farm. Plaintiff claims that the sign constitutes commercial advertising upon state right-of-way without authorization from the Missouri State Highway Commission and is a public nuisance under § 304.321, RSMo. 1969. Plaintiff requests that the court order the sign removed and the defendants restrained from maintaining in the future such signs on the highway right-of-way. Plaintiff has not alleged specifically nor have they offered any evidence that the sign constitutes a hazard to traffic.

In Count II, plaintiff alleged, "That, defendants, James J. Donaldson and Pearl Donaldson are the owners of certain property in Scotland County which adjoins certain of the above described right-of-way over which said Route T is built", and "that they have constructed, own and maintain a fence partially located upon the above described right-of-way which is adjacent to land owned by the said defendants." The plain-

---

1. Initially, we note that we have reviewed plaintiff's motion to dismiss the appeal for defendants' alleged failure to comply with S.Ct. Rule 84.04, and we deny said motion.

2. 304.321. *Unauthorized signal devices prohibited—trafficway not to be used for signs—nuisances declared.*

    1. No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports *to be or is an imitation of or* resembles an official traffic-control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effective-

ness of an official traffic-control device or any railroad sign or signal.
    2. No person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising unless authorized by the Missouri highway commission.
    3. This section shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information and of a type that cannot be mistaken for official signs.
    4. Every such prohibited sign, signal or marking is hereby declared to be a public nuisance.

tiff asked that the court order the removal of the fence and further restrain defendants from maintaining said fence in the future.

Defendants in their answer deny that the sign or fence is on the right-of-way of plaintiff, asserting instead that when the right-of-way for Highway T was planned, it was marked with stakes by the Highway Commission[3] and that the Donaldson fence was then built according to those stakes on land which was not a part of the state highway. Therefore, the determinative factual issue is whether the sign and the fence are within the right-of-way for Highway T.

Both the sign and fence involved herein are located near the intersection of Route T and Highway 15 in Scotland County. State Highway 15 runs generally north and south in this area. Route T intersects Route 15 and runs in a westerly direction from the intersection. The Donaldson land is on the southwest corner of that intersection.

The right-of-way to Route T was acquired by condemnation in 1933, at which time James Donaldson's parents were the owners of the disputed land. A metes and bounds description of a portion of the land condemned reads as follows:

Also, beginning at a point on the north line NE ¼ SW ¼ Sec. 14, said point is approximately 134 ft. east from the northwest corner thereof, said point is approximately 35 ft. south and at right angles to Sta. 286 + 86 on said centerline, thence east on said north line 38 ft. to intersect the northwesterly right-of-way line of Route 15, thence southwesterly on said northwesterly right-of-way line approximately 94 ft. to a point approximately 120 ft. south and at right angles to Sta. 286 + 86 on said centerline, thence north 85 ft. to point of beginning.[4]

The judgment of the court in 1933 ordered the condemnation of the land described in the condemnation petition and as

"shown by a survey and map of Supplementary State Highway No. T., . . . filed in the office of the County Clerk . . . and as shown by the *surveyors' stakes heretofore driven along the line of said highway* . . . ." (Emphasis added.)

Plaintiff's case is based principally upon the survey of Brent Jacobson, a registered professional engineer and land surveyor. From his survey, for which he utilized the above-quoted description from the condemnation proceedings, Jacobson found the sign to be upon the State's right-of-way within the property described by metes and bounds in these proceedings. The survey also showed that defendants' fence ran along the northern and eastern sides of the described triangle of property.

Plaintiff's evidence also includes several documents from the 1933 condemnation proceedings for Route T: the order for filing a petition of condemnation, an order appointing commissioners, and the judgment of the court in those proceedings. Plaintiff also introduced into evidence the plans for Route 15 and T, as well as photographs of the sign and the recent surveyor's plat. Plaintiff offered David Day, its "permit inspector" in District Three's office in Hannibal, who testified that he had sent a notice to Dunn to remove the sign.

In response to plaintiff's proof, defendants rely on the reference to the stakes in the 1933 condemnation proceedings. The condemnation petition stated that ". . . for a more accurate and perfect descriptions [sic] of said parcels or tracts of land . . . reference is hereby made to . . . the surveyor's stakes heretofore driven along the line of said highway." The report of the commissioners indicates they had viewed the "land being condemned herein to be staked off so that the *boundaries* and *limits* thereof could be and were seen by us when we viewed said lands; . . . ." The judgment referred to the property as that ". . . shown by the surveyors'

---

3. It is recognized that in highway condemnation cases the land is generally staked so the land owner and Commissioners will know what land is being taken.

4. According to plaintiff's survey, this description contains .04 acre.

stakes heretofore driven along said property."

Defendants maintain that the stakes set by the commission during the condemnation proceedings in 1933 marked the boundary line between the property condemned for Route T and the property retained by the Donaldson's. The defendants offered testimony that the fence on the south line of Highway T was built according to the line set by the stakes, which was parallel to Route T and extended east to the Route 15 right-of-way. James Donaldson testified that his father owned part of the land condemned in 1933 and that an agent of the highway department placed stakes along the line of the property it was taking. Donaldson explained that in the same year of the taking, 1933, he helped his father build a fence next to the stakes and that none of the fence was on the highway right-of-way. According to Donaldson, the fence had been recognized as the line since that time and until the filing of the second amended petition.

As further evidence in support of their position that the sign is not on plaintiff's right-of-way, defendants also offered as admissions against interest, plaintiff's original and first amended petitions, both of which alleged that the sign was on defendant Donaldson's property. The trial court found for the plaintiff and ordered the removal of the sign and fence.

■ In seeking a mandatory injunction, plaintiff has the burden of proving that the sign was on the right-of-way for Route T. *Barnhart v. Ripka*, 297 S.W.2d 787 (Mo.App. 1956). Consequently, in their first point of error, defendants alleged that the trial court erred in entering judgment for plaintiff in that plaintiff failed to carry its burden of proving that the area where the sign and the fence are located is within the right-of-way for Route T. More specifically, defendants object to the admission into evidence of the survey because it was not definitely shown that the survey ". . . commence[d] from a corner established by the government, or if lost, re-established in accordance with statutes." The defendants

point to statements made by Jacobson during voir dire by the defendants. While explaining the survey procedure, the surveyor stated, "The corner that this description [of the disputed portion of land] was tied to had never been set." After stating that he had not found any of the original corners to section 14, Jacobson testified that he reset one of the corners and in so doing used ". . . the information that's available in the area that remains to reset these corners."

Section 60.150, RSMo. 1969, in stating which surveys shall be legal evidence says:

"No survey or resurvey, hereafter made by any person, except that of the county surveyor or his deputy, shall be considered legal evidence in any court in this state, except such surveys as are made by the authority of the United States or by mutual consent of the parties."

The method of re-establishing a government corner is set out in §§ 60.290 and 60.300, RSMo. 1969.

Section 60.290 says:

"In establishing decayed or destroyed section corners, it shall be legal: First, to reestablish such decayed or destroyed corners at the point of intersection of the original marked section lines; if said point cannot be satisfactorily obtained by this mode, it shall be legal; second, to commence at any two section corners in transverse directions from the corner sought, and run random lines in the direction thereof to the quarter section corners; note the falling therefrom; then, adjusting the compass to the true course of said lines, respectively, continue the true course of said lines, and establish the corner sought at the point of intersection thereof; third, when several adjacent corners are decayed, it shall be legal to commence at any two of the nearest township, section or quarter section corners to the corner sought, and in transverse directions therefrom, and run in the direction thereof, on the general course of lines in the township in which the survey is to be made, until the lines intersect,

always, however, taking into consideration the fallings of the east and west lines, which point of intersection shall be the legal corner."

Section 60.300 says:

"In establishing decayed or destroyed quarter section corners, it shall be required to ascertain the medium point on the line between the two adjacent section corners, and reestablish such decayed or destroyed corners at said medium point."

In *Pioneer Cooperage Co. v. Bland*, 228 Mo.App. 994, 75 S.W.2d 431, 435 (1934) the court stated, "Evidence of a survey, which is not definitely shown to have been commenced from a corner established by the government, or reestablished in accordance with our statutes, has no probative force and would not be admissible." Also see *Carroz v. Kaminiski*, 467 S.W.2d 871, 872 (Mo. banc 1971); *Bowzer v. State Highway Commission*, 170 S.W.2d 399, 406 (Mo.1943); *Wells v. Elder*, 544 S.W.2d 258 (Mo.App. 1976); *Burke v. Colley*, 495 S.W.2d 699 (Mo. App.1973).

■ We have scanned the record and find that plaintiff failed to show that the Jacobson survey commenced at a corner established by the government, or if lost, re-established according to our statutes. The survey was therefore deficient for the purposes for which it was offered by plaintiff. Consequently, the survey and the testimony of the surveyor relative thereto is of no probative force to establish the boundary line between defendant Donaldson's land and the highway right-of-way.

With the elimination of this evidence, the issue becomes whether the remaining evidence is legally sufficient to support plaintiff's claim that the fence and sign were on plaintiff's right-of-way.

■ Plaintiff's exhibits as to the condemnation proceedings provide a description by metes and bounds as to the land condemned. It can be determined that this metes and bounds description is of a triangle of land. However, without the survey, we find no evidence indicating that the sign or the fence are on plaintiff's right-of-way and therefore plaintiff failed to carry its burden of proof.[5]

Furthermore, in response to plaintiff's contention that the metes and bounds descriptions control as to what land was condemned, defendant argues that the stakes set by the highway commission were artificial monuments and the fence which replaced the stakes is now an artificial monument prevailing over any metes and bounds description. In support of this position, defendants cite *Johnson v. Buffalo School Dist. No. 1 of Dallas County*, 360 Mo. 962, 231 S.W.2d 693, 696 (1950), where the Missouri Supreme Court stated, "It is well established doctrine that monuments, though artificial and not natural, will ordinarily control over courses and distances, if the monuments are established and can be located." See also *Jones et al. v. Poundstone et al.*, 102 Mo. 240, 14 S.W. 824 (1890); *Czarnecki v. Phillips Pipe Line Company*, 524 S.W.2d 153, 157 (Mo.App.1975); 12 Am. Jur.2d, Boundaries § 71.

■ Replying to defendants' contention that the state has too long recognized the fence along Highway T to now contest it, the plaintiff correctly asserts that the statute of limitations cannot run against the state. Section 516.090, RSMo. 1969; *Bowzer v. State Highway Commission*, 170 S.W.2d 399 (Mo.1943). However, the fact that the fence was built in the same year the land was condemned and has so remained in its original position is evidence supporting defendants' claim that the fence represents the right-of-way line. *Mothershead v. Milfeld*, 236 S.W.2d 343 (Mo.1951).

■ In reciting this evidence of defendants, we do not mean to suggest that we find such evidence conclusive or that we are weighing the evidence in the record, which is not our role on review. *Murphy v. Car-*

5. Assuming the admissibility of the survey, the proof fails as to the fence. Although the surveyor stated that a portion of the fence was located on the state right-of-way, he also testified that as to the fence, ". . . we didn't do it with the same accuracy as we did the sign. We approximate where the fence is." Approximations are not enough here.

*ron,* 536 S.W.2d 30, 32 (Mo. banc 1976). An admissible survey is not conclusive evidence of the line. Nor is the circuit court bound by defendants' evidence as to the stakes being the intended line. Both are merely evidence to be considered by the trier of fact in determining the right-of-way line.

Plaintiff also asserts that even without the surveyor's testimony, it has sustained its burden as to the sign through certain admissions on the part of defendants. In reference to the Hereford sign, defendant James Donaldson stated that he thought the sign extended a little over the fence, "[m]aybe six or eight inches over the fence." Defendant Dunn testified that the sign was erected in the early 1940's and stuck out ". . . [p]robably just a little bit . . . five or six inches . . ." over the fence. However, this testimony refers to the fence adjoining the Highway 15 right-of-way whereas plaintiff's pleading and theory are based on encroachments upon Route T.

Finally, we note that the remedy of injunction, "frequently characterized as 'the strong arm of equity,' is a summary, transcendent and extraordinary remedy [which], may not be invoked as a matter of course, and [which] should be exercised sparingly and only in clear cases; . . ." *Barnhart v. Ripka, supra* at 792. Upon the evidence before us, we repeat that the plaintiff failed to meet its burden of proof necessary to warrant the granting of an injunction. *Bowzer v. State Highway Commission, supra.*

The judgment of the trial court is reversed and the case remanded for a new trial.

STEWART, P. J., and STEPHAN, J., concur.