Mr. and Mrs. W. S. FULLER, Jr.,
Plaintiffs-Appellants,

v.

Helen PADLEY and James Wilson, Jr.,
Defendants-Respondents.

No. WD 32463.

Missouri Court of Appeals,
Western District.

Feb. 9, 1982.

Harold L. Caskey, Butler, Jeri Leigh Caskey, Alton, for plaintiffs-appellants.

Thomas M. Sullivan, Downey, Sullivan & Fitzgerald, Kansas City, for defendants-respondents.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Appellants Fuller appeal from a judgment in a court-tried case arising from a boundary dispute. The judgment was in favor of the defendants on their counter-

claim in two counts. The judgment on Count I was for ejectment with damages. The judgment on Count II quieted title in the defendants. Fullers had dismissed their petition before trial. The trial court had also issued an order before trial directing the Fullers to pay $100 to the defendants pursuant to a motion for sanctions filed by defendants.

The issues presented are the validity of the order last mentioned, the admissibility of the survey evidence offered by defendants to support the judgment in ejectment and the validity of the quiet title judgment.

The plaintiffs and defendants are the owners of two tracts of ground, both conveyed by metes and bounds descriptions. The parties have assumed on this appeal that the north boundary of the defendants' land and the south boundary of the plaintiffs' land are a common boundary at the point of dispute. This assumption of common boundary is likewise assumed for the purpose of the opinion, but the parties' deeds which were in evidence as exhibits have not been filed.[1] Enough appears, however, to be certain that each of the deed descriptions relies upon a point of beginning, which can only be located with reference to the center of Section 22, Township 40 North, Range 31 West. The point of reference is a point "575 links south and 45 links east of the center of Section 22."

The dispute arises because of the location of a dog pen. Defendants assert that this structure encroaches upon their land. In support of their position, the defendants presented the evidence of surveyor Lethco. His evidence was initially as to a specific survey completed at the behest of defendants, showing the boundaries by reference to the described point of beginning. On voir dire, Lethco conceded the center of Section 22 was not a "corner" in the original survey by the United States Government and that he had assumed that the location of the center point (which he said was in the center of two intersecting streets) was correct. The proffered evidence was upon objection rejected.

Defendants then undertook to prove that there were several surveys, some recorded, which also commenced at the same point. One of these surveys had been recorded for over fifty years. The surveyor also testified to having checked the deed descriptions from the disputed line north to the center of the section and testified that there was sufficient distance to accommodate all the deed descriptions northward to the assumed point. He further found the possession lines to be generally consistent with the deed descriptions. There was evidence that there was encroachment on the north boundary line of plaintiffs by a garage if the east-west line on the south and east-west line on the north were as the surveyor found them. Upon this further proof, the trial court admitted the survey made for defendants over the objection that the survey did not commence from a corner located by the original government survey, nor from a center point of the section established in accordance with the applicable statute. Section 60.220 RSMo 1978, now Section 60.255 RSMo Supp.1981.

There is no evidence in this case by record or otherwise that establishes the validity of the assumed point relied upon by surveyor Lethco. All of the documentary evidence offered proceeded upon the same assumption made by Lethco—that the center of Section 22 coincides with the center point of the intersection of two streets. Lethco testified that he ran the north-south line passing through the presumed center of Section 22. However, he did not follow the procedure prescribed by the statutes to establish the center of the section because he failed to run a line east and west commencing at either of the quarter corners to determine the center of the section by the intersection of those lines. There is no evidence as to whether any of the necessary corners have been "lost." Insofar as appears, they could have been found and the necessary intersecting line surveyed. Lethco testified that he did not undertake that work because of the expense involved.

1. The deed descriptions in the pleadings are sufficient to show that the assumption is cor- rect as to the portion of the north-south boundary which is common to the parties.

■ The plaintiffs have asserted, by proper objection and their after judgment motions and on this appeal, the proposition that no probative evidence showing the boundary line between the plaintiffs and defendants has been offered. Thus, plaintiffs assert the judgment with respect to ejectment must fail since the defendants have not carried their burden of proof. It was essential to the defendants' case in ejectment to prove that the land in contention was within the deed description to their property. There was in this case a true boundary dispute, and evidence of survey sufficient to show that the plaintiffs were in possession of land embraced within the deed description of the defendants was essential to a recovery in ejectment. *Carender v. Barry*, 623 S.W.2d 73, 75 (Mo.App. 1981).

■ The plaintiffs, in asserting that the evidence was inadmissible, rely upon a long line of cases so holding. That rule of evidence has been affirmed as recently as *Carroz v. Kaminiski*, 467 S.W.2d 871, 872 (Mo. banc 1971). The rule has also recently been followed in this District in *Roberts v. Harms*, 627 S.W.2d 924 (Mo.App.1982). The defendants answer the contention by asserting that the cases were based upon Section 60.150 RSMo 1978, and that that statute, having been repealed, the cases are no longer authority for the proposition asserted. It is unnecessary to enter into an extended discussion of the origin of the rule of evidence denying probative value to surveys which do not properly relate to the original government survey. It is sufficient to say that whatever may have been the role of Section 60.150 RSMo 1978 in the adoption of that rule of evidence, it is sufficiently established by the case law as a rule of evidence in this state that it cannot be disturbed. In addition to the fact that the rule is settled by controlling authority of the Supreme Court en banc—which would ordinarily be sufficient to require adherence to the rule—the repeal and substantial amendment of Chapter 60 accomplished by the legislature in 1979 lends additional support for the retention of the rule. Additionally, this survey was performed prior to September 28, 1979, and thus, is within the ambit of the old statute.

■ The policy of the present statute with respect to the use of existent corners of the United States public land survey is specified in Section 60.215 RSMo Supp.1981 as follows:

Corners, original position to be determined.—The restoration and utilization of the existent corners of the United States public land survey is a prime objective of every survey.

Although the substantial revision of Chapter 60 relating to surveys has altered in some respects the manner of performing surveys and of locating any lost corners, the entire scheme of the chapter intends to conform land surveys to the original survey. An extensive provision is made in the statutes for the adjustment of distances when modern surveying methods disclose discrepancies or variations of measurements in the original survey. The statutes recognize the long-standing rule that monuments control over distances and recognizes the corners established in the United States public land survey as being permanent monuments not subject to change or obliteration.

■ As a second ground of support for its position, the defendants assert that the instant case is within an exception to the rule as set forth in *Clark v. McAtee*, 227 Mo. 152, 127 S.W. 37, 49 (1910). *Clark v. McAtee* was a case in which the parties were in agreement with respect to the tract of land to be divided and the dispute centered upon a measurement extending from boundary to boundary of their combined tract. In settling the internal boundary line according to their deed descriptions, the court admitted evidence of a survey which did not conform to the rule ordinarily applied. The court on appeal noted that there was no overlap in the deeds and that all that was required was to measure the distance between two boundaries, which the parties agreed embraced the whole of both of their tracts. Thus, it was a simple matter to measure the aggregate distance and

mark the boundary between the parties since their dispute could affect no other boundary. In the instant case, however, as with most boundary line disputes, the location of the line of the parties may in turn affect other persons who are not parties to the litigation. The stability of land titles demands that surveys to establish boundary proceed from a common acknowledged point and that all boundaries be dependent upon that single fixed and determinable point or points. To rule otherwise would create intolerable chaos in the location of boundary lines. The surveys in the instant case were not admissible, and there is no evidence before the court to support ejectment.

With respect to the judgment of the court quieting title in the defendants, it is very doubtful that quiet title was a proper remedy in the case. *Probst v. Probst*, 595 S.W.2d 289, 291 (Mo.App.1979); *Carroz v. Kaminiski, supra* at 872. As noted above, there was no overlap in deeds, and there is no claim of adverse possession in this case. In any event, the judgment with respect to quieting title is so vague and indefinite as to be void on its face. There is no formal judgment entry in this case, a matter which the parties have not noted. All that appears is the minute entry of the court which is, "The court finds that plaintiffs have no right, title, or interest in and to the property south of a line established by survey." Such a fragmentary description of the title to real estate does not rise to the dignity of a judgment sufficient to convey title if, in fact, there were some title dispute which, as noted, there was not.

Finally, the issue of the penalty assessed against the plaintiffs as "sanctions" for failing to comply with discovery must be considered. It is assumed for the purpose of this opinion that the circumstances of the plaintiffs' actions in objecting to interrogatories in vague and general terms and thereafter making no real contention with respect to the objections constituted a basis for the imposition of sanctions. Even so considered, the sanction imposed by the trial court has no warrant in either rule or case law, and the defendants cite no authority in support of their position. Rule 61.01(b)(1) provides specifically for the sanction of striking pleadings, dismissal, or judgment by default. No other sanction is specifically referred to.

On the other hand, Rule 61.01(g) specifically provides for payment of expenses including attorneys fees as a sanction for failure to answer questions on depositions. If the Supreme Court had intended that the payment of expenses and attorneys fees be authorized with respect to interrogatories, it would seem that it would have been stated specifically as it was with respect to the failure to answer questions on depositions. There seems no good reason to write into Rule 61.01(b)(1) a sanction not specified.

The order directing plaintiffs to pay $100 to defendants is set aside. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

All concur.