**Charles E. HALL, et al.,
Appellants–Cross–Respondents,**

v.

**Patricia E. ALLEN, et al.,
Respondents–Cross–Appellants.**

No. 71102.

Supreme Court of Missouri,
En Banc.

April 18, 1989.

Rehearing Denied May 16, 1989.

Richard L. Schnake and Jerry L. Red-fern, Springfield, for plaintiffs-appel-lants/cross-respondents.

Richard D. Bender, Springfield, for de-fendants-respondents/cross-appellants.

HIGGINS, Judge.

Charles E. Hall, et al., sued Patricia E. Allen, et al., to quiet title to a strip of land in the Gobbler's Mountain Subdivision on Table Rock Lake. The plaintiffs claimed title to the strip by deed and by adverse possession, and in the alternative, claimed easements across it by deed and by pre-scription; the defendants claimed to be the record owners of the strip. Both sides presented surveys to the trial court in sup-port of their respective positions. The trial

court rejected the surveys for want of credibility and found that the plaintiffs had not carried their burden of proving ownership. It therefore entered judgment against the plaintiffs on all counts and refused to quiet title to the disputed strip. The Court of Appeals, Southern District, affirmed. Appeal was taken only by plaintiffs Hall, Keller and Burns; both defendants joined in a cross-appeal. This Court reverses and remands the judgment as it relates to the plaintiffs'-appellants' claim to an easement, and affirms it in all other respects.

The plaintiffs are the owners of Lots 14, 15, 17, 18 and 19 in Block 6 of Gobbler's Mountain Subdivision, Stone County, Missouri. According to their deeds and the Subdivision plat, their property is bounded on the southwest by Lake Shore Drive. *See,* Appendix, Diagram A. The defendants own Lot 13 of the same Subdivision. Lot 13 is on the southwest side of Lake Shore Drive, and the various plats and deeds make it unclear where its boundaries lie. The disputed strip is adjacent to Lot 13, across Lake Shore Drive from the plaintiffs' properties; no document, except for the parties' own surveys, accounts for all of it.

In 1956, M.L. and Rena Strohm, after conveying a portion of their property to the United States Government for Table Rock Lake, platted the Gobbler's Mountain Subdivision. The Strohms dedicated the streets and alleys to public use. The plat recited that it was made in conformity with a survey made by J.R. Stults, Surveyor. It showed dimensions for most of the lots, including all of the dimensions relevant to this lawsuit. The dimensions listed in the original plat for Lot 13 cannot form a closed figure, and in any case, the purported measurement along Lake Shore Drive, if correct, would not account for the entirety of the disputed strip. *See,* Appendix, Diagram A.

Twice in 1962, and again in 1969, the Strohms amended the plat. The dimensions of Lot 13 disappear in the process of amendment, and the lot is represented as a triangle. None of the plats account for the strip now in dispute. *See,* Appendix, Diagram A.

The plaintiffs acquired their property as follows: the Strohms conveyed Lot 14 to Anthony and Elvina Lee Manganella on September 9, 1960, describing the lot as having "90 ft. frontage on LAKE SHORE DRIVE and 30 ft. frontage on PLEASANT DRIVE," and granting "free access to Lake in front of Lot 14, Block 6." The Halls purchased Lot 14 by general warranty deed in 1971. Lot 15 was first conveyed by the Strohms on September 19, 1972, and is now owned by Charles E. and Betty J. Ballard. Lot 17 was first conveyed on October 14, 1960, and is now owned by Kenneth R. and Louise C. Keller. Stephen T. Burns purchased Lot 18, "according to the Third Amended Plat of record thereof," in 1981. Everett L. and Geraldine A. Swan purchased Lot 19 in 1975, also "according to the Third Amended Plat."

On January 26, 1962, before any amendments were made to the plat, the Strohms conveyed Lot 13 to John L. and Anna W. Gassaway. The defendants, Allen and Pierce, had a survey of Lot 13 prepared, *see* Appendix, Diagram B, and on October 18, 1978, purchased Lot 13 from the Gassaways.

On October 2, 1969, the Strohms conveyed property in the area to Maier Developments, Inc. The deed described the land, in pertinent part, as follows:

All of the N.W. ¼ of section 11, Township 22 North Range 23 West, EXCEPT Table Rock Tract No. F–600, and EXCEPT the lots and tracts being a part of Gobbler's Mountain Subdivision according to the recorded plat thereof, described as follows;

. . . . .

Block 6: Lots 13, 14 & 15, 17.

Thus, the Strohms conveyed all of the land in the Subdivision that was not a part of the specified lots. Prior to trial, Maier Development conveyed to the plaintiffs, by quit claim deed, the disputed strip as shown by the plaintiffs' survey.

Prior to 1978, the plaintiffs had used the disputed strip freely for access to the Lake.

The Halls and the Kellers each owned a boat dock on the Lake directly across from their respective lots. They testified that before the defendants began to build their house on Lot 13, they maintained pathways leading directly to their boat docks. All of the plaintiffs testified that they used the disputed strip for recreation and for access to the Lake.

When the defendants began building their house, blasting made it impossible for the Halls to continue to maintain their pathway. Subsequently, the defendants erected a fence running approximately 400 feet along Lake Shore Drive, blocking the plaintiffs' access to the Lake. The plaintiffs were granted a temporary restraining order, but the order was lifted and the fence was completed pending the outcome of this suit for possession, at the defendants' own risk. For most of its length the fence is chain-link. In front of the Halls' lot, however, it is made of eight-foot wooden boards, not only blocking the Hall's path to the Lake, but also partially obstructing their view. So far as the record reveals, the Halls have not attempted to maintain their path since the defendants' construction work began.

On July 4, 1982, a confrontation occurred between Mr. Burns and Ms. Allen while Mr. Burns was cutting weeds on the disputed strip. Each asserted ownership at that time. The plaintiffs engaged a surveyor, Mr. Rozell, who prepared a survey, extending the plaintiffs' property lines across Lake Shore Drive to the Government Fee Take Line. *See*, Appendix, Diagram C.

At trial, the parties' surveyors testified as to the bases for their surveys. Mr. Spainhour, who surveyed for the defendants, testified that he did not base his survey on any existing pins or survey stakes, but rather on his own interpretation of the Strohm's intention in laying out Lot 13. Mr. Rozell testified that he based his survey 50% on available deed descriptions and 50% on what the plaintiffs told him was their property. He further testified that the survey he had prepared for the plaintiffs was not worth the paper it was written on. The trial court found that neither survey was sufficiently based in fact to be considered as evidence.

The first address is the error charged to the trial court's failure to quiet title to the disputed tract. The plaintiffs, as appellants, and the defendants, as cross-appellants, contend that the trial court erred in failing to make a declaration as to which parties have superior title to the disputed strip. "In an action to quiet title the court is required to adjudicate the respective interests of the parties even though the plaintiff fails to establish his claim of title and even if the defendant does not request an adjudication of title." *Baldwin v. Black*, 618 S.W.2d 730, 731 (Mo.App.1981).

■ Count I of the plaintiffs' petition is denominated "Petition for Declaratory Judgment to Quiet Title." An action to quiet title is not, however, the proper action to obtain the relief requested here. "A dispute in which each owner admits the title of the other but disagrees as to the physical location of the boundary is not a title controversy." *Roberts v. Harms*, 627 S.W.2d 924, 926–927 (Mo.App.1982). In this case the plaintiffs allege that Lots 14, 15, 17 and 18, which they undisputedly own, extend across Lake Shore Drive to the Government Fee Take Line. The proper action, therefore, would sound in ejectment. In an action to establish a boundary line, the party asserting a specific location of such a line bears the burden of presenting credible evidence to establish that location. *Fuller v. Padley*, 628 S.W.2d 719 (Mo.App.1982). Here the plaintiffs failed to carry that burden, and the defendants did not ask the trial court for a declaration establishing the boundaries of their lot. Therefore, no judgment establishing boundaries was appropriate, and the trial court did not err in its denial of a quiet title judgment.

■ In their second point the plaintiffs assert ownership of the strip through the quit claim deed from Maier Development, Inc. The trial court found against them on this claim because they had not proved that the land shown in the Rozell survey was Maier's to convey. It further concluded

that it was unable to determine from the evidence the proper contours of the lot in question. This Court finds no error in the trial court's disposition of the claim.

■ In their third point, the plaintiffs argue that the trial court erred in finding that no easement in their favor existed across the disputed strip.[1] The Halls' predecessors in title were granted "free access to Lake in front of Lot 14, Block 6." An easement may be created even though its precise location is not described in the grant. If the location is not precisely fixed when the easement is first created, the grantee is entitled to a convenient, reasonable and accessible use. *Edward Runge Land Co. v. Busch,* 594 S.W.2d 647, 650 (Mo.App.1980). The Halls' predecessors built a dock on the Lake across from their lot and maintained a path across the disputed strip. An easement was therefore created. The Halls' predecessors owned the dominant tenement, Lot 14, along with the easement. The Strohms owned all of the servient tenement, Lot 13, together with the disputed strip. The location of the easement was defined by usage.

■ Upon conveyance, the easement passed with the dominant tenement, Lot 14, and the Halls continued to maintain the dock and the path until the defendants' construction made it impossible to do so. The trial court erred in its declaration that an easement must be described in a deed in order to be conveyed. *See, Beldner v. General Electric Co.,* 451 S.W.2d 65 (Mo. 1970).

■ Assuming, *arguendo,* that the defendants have, as they aver, an ownership interest in at least part of the servient tenement, in order for the terms of the easement to be binding on them they must have had either notice of record, actual notice, or constructive notice. *Drainage District No. 48 v. Small,* 318 S.W.2d 497 (Mo. banc 1958). The appellants do not dispute the trial court's finding that the easement was not recorded in the defendants' chain of title, and its finding that no evidence supported a finding of actual notice. Nevertheless, "a purchaser of real estate is charged with notice of an easement where the existence of the servitude is apparent upon an ordinary inspection of the premises." *Small,* 318 S.W.2d 497, 502. In this case an ordinary inspection by the defendants of the land depicted in the Spainhour survey would reveal the existence of a boat dock and a footpath leading to it. Thus, the defendants may properly be charged with notice of a servitude in favor of the plaintiffs.

At trial, the court was faced with myriad and conflicting evidence regarding the contours of the property. In addition, during the pendency of this lawsuit, the footpath between Lake Shore Drive and the boat dock became overgrown, perhaps beyond detection. The cause must therefore be remanded for a determination of the precise route of access to be afforded to the plaintiffs. If the old path escapes detection, then the court should undertake to outline a route of access consistent with the interests of convenience, and reasonable, accessible use. The cause is also remanded with directions to issue a mandatory injunction directing the defendants to alter the fence as is necessary to comport with this opinion. The judgment is otherwise affirmed.

All concur.

---

1. The plaintiffs have abandoned their claim to an easement by prescription by failing to brief it on appeal. Rule 84.13(a). In their reply brief, the plaintiffs state: "argument regarding permissive use and easements by prescription ... thus has no bearing on the issues at hand."

APPENDIX

Diagram A

Filed September 18, 1956

First Amended Plat
Filed February 14, 1962

Second Amended Plat
Filed December 31, 1962

Third Amended Plat
Filed April 9, 1969

APPENDIX

Diagram B

APPENDIX

Diagram C

